UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

L.M.,

Petitioner,

- against -

ROBERT BROWN, Metropolitan Detention Center Warden, *et al.*,

Respondents.

**MEMORANDUM DECISION AND ORDER**

26-cv-6949 (BMC)

**COGAN**, District Judge.

Petitioner L.M., a Honduran national, seeks a writ of habeas corpus under 22 U.S.C. § 2241. Petitioner seeks immediate release from U.S. Immigration and Customs Enforcement ("ICE") detention and moves to proceed under a pseudonym, the latter of which respondents have not opposed. For the following reasons, petitioner's motion to proceed via pseudonym is granted and the petition is denied without prejudice.

## BACKGROUND

Petitioner entered the United States at an unknown time and location. He has lived in New York for approximately 20 years. In April 2025, the Nassau County Police Department arrested petitioner for possession of a controlled substance in the seventh degree (a misdemeanor). A bench warrant for petitioner's arrest was issued in June 2025 because he did not appear for his scheduled court date. Until June 2026, petitioner had no recorded interactions with U.S. Border Patrol or ICE.

On the morning of June 20, 2026, while conducting a targeted enforcement action regarding another individual, ICE encountered petitioner in Westbury, New York. ICE officers approached L.M. and asked him for his name and birth date.

Aside from this initial interaction, the facts of this encounter are disputed. According to petitioner, when the ICE agents asked him about his legal status in the United States, he stopped answering their questions and said he did not want to answer any more questions without a lawyer. According to respondents, petitioner participated in a "consensual field interview" and "disclosed that he is a citizen and national of Honduras illegally present in the United States." Respondents further assert that, at some point during the conversation, petitioner admitted to crossing the U.S.-Mexico border in 2009.[1] The parties agree that, after the back and forth between petitioner and the officers, ICE arrested petitioner without a warrant and transported him to Nassau County ICE Intake in East Meadow, New York for processing.

The facts of petitioner's intake are also disputed. The parties appear to agree that ICE agents interviewed petitioner to some extent upon his arrival at the intake office. According to petitioner, it was not until he spoke with this group of ICE agents at the intake office that he admitted he was from Honduras. Petitioner states that they also asked him about his prior criminal arrest but did not advise him or ask him questions about a custody determination. According to respondents, ICE conducted a full interview of petitioner, considered the relevant factors for an individualized custody determination, and "concluded that petitioner poses a

[1] In response to this Court's order to show cause why petitioner's habeas petition should not be granted, respondents provided a declaration from an ICE officer named Dmitry Rousseau. Officer Rousseau's declaration is based on his "review of DHS records and databases maintained in the ordinary course of business." Evidently, Officer Rousseau was not involved in petitioner's arrest or intake, leaving the Court without a declarant from respondents who can offer personal knowledge on petitioner's arrest, intake, and initial custody determination.

danger to persons or property due to his arrest for Criminal Possession of a controlled substance and the bench warrant for his arrest issued on June 16, 2025."

Respondents have submitted documents regarding that individualized custody determination. Specifically, respondents submitted (1) a Notice of Custody Determination, dated June 20, 2026 at 8:16 a.m., indicating that petitioner was advised in Spanish that he would be detained but had a right to an immigration judge's review; and (2) an initial custody determination worksheet, dated June 20, 2026 at 11:04 a.m., which New York City field officers must complete for initial custody determinations pursuant to a settlement in Velesaca v. Decker, No. 20-cv-1803 (S.D.N.Y.). The Notice of Custody Determination indicates that petitioner refused to sign it and did not answer whether he wanted an immigration judge to review the custody determination. Petitioner denies ever seeing the document. The notice also indicates that the notice was read to petitioner in Spanish, but petitioner asserts that the only documents he received were in English; he does not speak English; and no one translated them.

After petitioner's intake, he was transferred to Nassau County Correctional Center. Two days later, he was transferred to Delaney Hall in Newark, New Jersey. Three days after that, he was transferred to Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he remains today.

On the same day petitioner was arrested, ICE issued and petitioner was served with a Notice to Appear ("NTA") charging petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i). His removal proceedings are underway. In July 2026, petitioner applied for relief from removal. An immigration judge denied that application and ordered him removed to Honduras. Petitioner's appeal, filed in August 2026, is pending.

Petitioner has been detained for approximately five months. To date, he has not requested a review of his custody determination by an immigration judge.

## LEGAL STANDARD

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Ozturk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)). However, "[t]he general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003) (quoting Howell v. INS, 72 F.3d 288, 291 (2d Cir. 1995)).

## DISCUSSION

Under 8 U.S.C. § 1226(a), Section 1226(a) "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Although Section 1226(a) generally requires "a warrant issued by the Attorney General," under 8 U.S.C. § 1357, immigration officers may arrest an alien without a warrant under limited circumstances.[2] "Under Section 1226(a), detention is discretionary, and 'the Attorney General … may release the alien on bond … or conditional parole.'" See Barbosa da Cunha v. Freden, 175 F.4th 61, 72 (2d

[2] Specifically, an officer may "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). For the reasons stated below, the Court does not decide whether such limited circumstances were satisfied during petitioner's arrest.

Cir. 2026). "Section 1226(a) plainly applies to noncitizens, like petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection or admission." Id. at 73.

To secure release from detention under Section 1226(a), "the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021). "If detained, the alien may seek review of the initial custody determination by an immigration judge." Batista v. Genalo, No. 26-cv-5408, 2026 WL 2169849, at *3 (S.D.N.Y. July 28, 2026). The losing party before the immigration judge "may appeal the immigration judge's decision to the Board of Immigration Appeals (BIA)." Johnson, 594 U.S. at 527-28.

It is undisputed that, although he has been detained for nearly five months, petitioner has not requested review of his initial custody determination by an immigration judge. Respondents argue that the petition should therefore be denied for failure to exhaust administrative remedies. The Court agrees.

"It is long established that a habeas petitioner must exhaust the administrative remedies at his disposal before filing a petition for habeas relief." Molina v. Lyons, No. 26-cv-3184, 2026 WL 1734618, at *1 (E.D.N.Y. June 11, 2026) (citing Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001)); see also Hernandez v. Maldonado, No. 26-cv-5584, 2026 WL 2983493, at *1 (E.D.N.Y. Oct. 5, 2026) (explaining that the exhaustion requirement "serves 'purposes includ[ing] protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary'" (quoting Beharry, 329 F.3d at 56)). This exhaustion requirement is judicially created rather than statutory, and the Court may excuse a

failure to exhaust if one of four exceptions applies: "(1) a showing that available administrative remedies provide no opportunity for genuine relief; (2) a showing of irreparable injury if there is no immediate judicial relief; (3) a showing of the futility of available remedies; and (4) in some cases, a substantial constitutional question." Madkour v. Ashcroft, 74 F. App'x 89, 90 (2d Cir. 2003) (citing Beharry, 329 F.3d at 62).

Here, petitioner has not yet exhausted his administrative remedies. Administrative review "may provide him with the relief that he seeks – *i.e.*, his release," and in such cases, petitioners must exhaust their administrative remedies "before seeking judicial relief." Michalski v. Decker, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018); see also Batista, 2026 WL 2169849, at *5 (dismissing habeas petition because petitioner "has a non-futile remedy in the form of a bond hearing that could render all his habeas claims moot"); Fontanelli as Next Friend of Bernal Garcia v. Francis, No. 25-cv-7715, 2025 WL 2773234, at *5 (S.D.N.Y. Sept. 29, 2025) (dismissing habeas petition for failure to exhaust and noting that exhaustion requirement "aims to provide the agency with a chance to correct its own errors" (citation omitted)). Petitioner argues that the exhaustion requirement should be excused because all four exceptions apply, but the Court is not persuaded.

On the first exception to the exhaustion requirement petitioner argues "there is no available administrative process to remedy [his] unlawful arrest." Although it is true that petitioner's hearing before an immigration judge will focus on whether petitioner is entitled to be released on bond (rather than whether his arrest was unlawful), it is also true that the immigration judge could grant the relief petitioner seeks (*i.e.*, his release). This would surely constitute "genuine relief" for petitioner.

On the second exception, petitioner argues that he will suffer irreparable injury without immediate relief because his detention will continue. But it is well-established that continued detention does not constitute irreparable injury sufficient to overcome the exhaustion requirement. See Marshall v. Arteta, 26-cv-4110, 2026 WL 1724311, at *4 (S.D.N.Y. June 15, 2026) ("If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that the INS administrative remedies must be exhausted before resorting to the federal courts." (quoting Paz Nativi v. Shanahan, No. 16-cv-8496, 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017))); Hernandez, 2026 WL 2983493, at *2 (same).

On the third exception, petitioner argues that "any attempt to obtain a constitutionally adequate bond hearing to address petitioner's injuries would be futile because of how the burden of proof is allocated in Immigration Court bond proceedings." The fact that petitioner will bear the burden of proof at the bond hearing does not render the hearing futile. See Beharry, 329 F.3d at 62 ("That [petitioner's] argument would likely have failed is not tantamount to stating that it would have been futile to raise it.").

On the fourth exception, petitioner argues that he "brings constitutional claims that the agency cannot address." Although plaintiff is likely correct that a bond hearing will not adjudicate all of the alleged due process violations, exhaustion "is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). This Court need not (and should not) adjudicate the alleged constitutional issues if petitioner could be released by the immigration judge on other grounds. See Guzman v. Joyce, 786 F. Supp. 3d 865, 871 (S.D.N.Y. 2025) ("'The purpose of the exhaustion requirement is to facilitate administrative resolution of issues that might render judicial review unnecessary.' … Thus, … 'courts will endeavor to avoid

deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" (citations omitted)); Hernandez, 2026 WL 2983493, at *2 ("[T]he constitutional claims petitioner presents may well be mooted [by an administrative bond decision].").

To summarize, petitioner must allow the agency "a chance to correct its own errors." Fontanelli, 2025 WL 2773234, at *8. "If petitioner 'remains detained as a result of his [potential] bond hearing and any appeal to the Board of Immigration Appeals, he may file another habeas petition.'" Castillo Lachapel v. Joyce, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025) (quoting Michalski, 279 F. Supp. 3d at 497).

**CONCLUSION**

Petitioner's motion to proceed via pseudonym is granted and the petition is denied without prejudice.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
November 18, 2026